SARAH E. QUADE, *et al.*, Appellants, *vs.* S. J. FISHER, *et al.*, Respondents.

1. *Evidence—Action to set aside deed of trust on wife's land—Husband and wife—Testimony of both admissible.*—In a proceeding by husband and wife to enjoin a sale under a deed of trust given on land óf the wife, and to set aside the deed as being procured by fraud, the testimony of the husband and that of the wife were both held admissible, that of the wife as being the chief party in interest, and that of the husband as being her agent.

*Appeal from Jackson Co. Special Law and Equity Court.*

*Campbell & Yeager, with F. M. Black,* for Appellants.

*Karnes & Ess, with Tichenor & Warner,* for Respondents.

SHERWOOD, Judge, delivered the opinion of the court.

The plaintiffs, who are husband and wife, seek by this procedure to enjoin a sale under a deed of trust, and to cancel that deed, alleging that it was obtained by fraud, that the loan which the deed was designed to secure was never perfected, nor the deed delivered. The land described in the instrument is that of the wife. The answer was for the most part a denial in substance of the plaintiffs' allegations. A temporary injunction was granted, but on the final hearing this was dissolved and judgment went for the defendants.

It is insisted by appellants: 1st, That the court should have directly passed upon the question whether the testimony of the plaintiffs was received or rejected; 2nd, that if such testimony was received then the finding was manifestly against the evidence.

After a careful consideration of the matter, we incline to the opinion, that, in this instance, the testimony of both husband and wife was admissible. That of the former, because he was acting as the agent of his wife (Chesley vs. Chesley, 54 Mo. 347); that of the latter, because she was the chief party in interest, and testifying in relation to her property. (Buck vs. Ashbrook, 51 Mo. 539, cas. cit.) But granting that the testimony in question was received and considered by the trial court, it does not thence follow that the result reached should have been different, for we regard the evidence as largely preponderating on the side of the defendants.

That the loan was actually consummated, although by mistake the note recited in the deed of trust was not signed, is shown by S. J. Fisher, the trustee; by the admission of Chas. H. Quade, to Harrison and to Smith within a few days after the loan was completed, that the money·was obtained; by the promise of Mrs. Quade to Harrison (who called to have the mistake corrected) that she would "get Charley to sign the note and bring it up to the office," and by the very cogent fact that the $340 which Fisher says was reserved out of the $800, borrowed by Quade, in order to pay off a prior incumbrance held by Smith's father, was paid by Fisher to Smith, just as the latter testifies Quade promised it should be, when admitting that the loan was effected and stating the terms on which it was secured.    And the testimony of Fisher that the loan was really made, finds further corroboration in the testimony of Parsons, showing the amount which Fisher and Quade calculated would be requisite to release the property from incumbrance.    And this sum $882.50 thus ascertained, testified to by Parsons from memory, corresponds very nearly with the figures, which Fisher says were made at the time referred to, and which he produced at the trial.    And Quade himself testifies, that the paper purporting to contain these figures "looks like the paper on which Fisher was figuring two or three days before I paid the money."    And if the memorandum or calculation thus made is to be regarded as correct, it is utterly inconsistent with the idea that no loan was obtained from Kiel.    So that Quade is directly contradicted by Fisher, and indirectly but quite effectually by Parsons and by the memorandum produced.

Quade claims that in making the payment to Fisher of $377.50, his only intention was to pay off the Smith incumbrance, but this is evidently untrue, as the Smith loan was only $300, made March 1st, 1872, for one year at ten per cent., and the payment occurred July 21st, 1873.

But there are other inconsistencies in the testimony of Quade. He says that owing to some disagreement respecting commissions, he would not take the Kiel loan, but told Fisher that he would go and see Harrison, (whom he had previously spoken to about the

loan) and bring him in ; and yet he never attempts to see Harrison in relation to the terms of the loan, never returns to get the deed of trust, which was intended to secure the loan, left signed and duly acknowledged on Fisher's table, but abandons the whole design of obtaining a loan, and notwithstanding this, when as he says Fisher informed him in July, 1873, that the deed of trust sought to be canceled had been placed on record and demands payment of the debt thereby secured, expresses neither indignation nor surprise.   Such a course of conduct is not impossible, but most certainly altogether improbable.

But there is one other pregnant circumstance in this connection, which in the endeavor to place a proper estimate upon Quade's testimony must not be omitted.   I refer to the manner by which Quade obtained possession of the releases.   He, himself, says that Fisher never handed him the releases, which were designed to free his wife's land from the Smith and the Kiel deeds of trust ; and Fisher and Parsons - both agree that while Fisher was engaged in counting the large bundle of money which Quade had brought, consisting for the most part of half dollars in fractional currency, and ten dollar bills, Quade without permission, picked up the releases, furtively gained the door, and could not be found when upon the completion of the counting of the money, it was ascertained to be $500 short.   The releases were afterwards found filed for record.   Taking all these matters of testimony heretofore detailed into careful consideration, it would seem extremely difficult to reach any other conclusion than that arrived at by the lower court.   And although it would have been the proper course for that court to declare whether the testimony of the husband and wife was admitted or rejected, still the failure to make such declaration has not prejudiced the plaintiffs and cannot therefore be held reversible error.

Judgment affirmed ; all the judges concur.